FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 17, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHANE B., | No. 1:17-cv-00389-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 17, 22 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 22. The parties consented to proceed before a magistrate judge. ECF No. 5. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 22.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER - 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

ORDER - 2

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that he has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can adjust to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On November 17, 2014, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of July 1, 2014. Tr. 251-62. The applications were denied initially, Tr. 153-65, and on reconsideration, Tr. 174-80. Plaintiff appeared before an administrative law judge (ALJ) on November 14, 2016. Tr. 45-108. On January 13, 2017, the ALJ denied Plaintiff's claim. Tr. 23-37.

At step one of the sequential evaluation process, the ALJ found Plaintiff engaged in substantial gainful activity the fourth quarter of 2014 but otherwise has not engaged in substantial gainful activity since the alleged disability onset date. Tr. 26-27. At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis (multiple joints), degenerative disc disease of the lumbar and cervical spine, sleep apnea, and obesity. Tr. 27.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 31. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift no more than 20 pounds at a time occasionally and lift or carry 10 pounds at a time frequently; can sit 6 hours and stand and/or walk 6 hours total, in any combination, in an 8-hour workday with normal breaks; can frequently climb ramps/stairs; can occasionally climb ladders/ropes/scaffolds, stoop, crouch, kneel, crawl, and or balance; and should avoid concentrated exposure to heavy industrial-type vibration.

Tr. 31-32.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 35. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as photo finisher, convenience store cashier, final assembler-optical, and document preparer. Tr. 36. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of July 1, 2014, though the date of the decision. Tr. 37.

On October 12, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-8, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

# ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly identified Plaintiff's severe impairments at step two;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ properly incorporated the opined limitations into the RFC; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 17 at 10.

# DISCUSSION

## A. Step Two: Severe Impairments

Plaintiff contends the ALJ erred at step two by failing to identify his hands/bicep condition and mental-health condition as severe impairments. ECF No. 17 at 14-16.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c),

ORDER - 8

416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. §§ 404.1508, 416.908 (2010).[1]  The claimant's own statement of symptoms alone will not suffice.  *Id.*

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  Soc. Sec. Rlg. (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, dealing with changes in a routine work

---

[1] As of March 27, 2017, 20 C.F.R. §§ 416.908 and 404.1508 were removed and reserved and 20 C.F.R. §§ 416.921 and 404.1521 were respectively revised to define what constitutes a medically determinable impairment.  The Court applies the statutory versions in effect at the time of the ALJ's decision.

setting, and responding appropriately to supervision, coworkers, and usual work situations.  20 C.F.R. § 416.921(a) (2010);[2] SSR 85-28.

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

### 1. Hands/Bicep Condition

Plaintiff argues the ALJ erred by not considering his hands/bicep condition as a severe impairment.  ECF No. 17 at 16.  To succeed, Plaintiff must establish there was medical evidence proving that Plaintiff suffers from a hands/bicep impairment that significantly limited his physical ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); 20 C.F.R. §§ 404.1508, 416.908 (eff. until March 26, 2017).  Here, while there were notations in the medical file that Plaintiff complained of pain in his hands and arms and that Plaintiff was occasionally

---

[2] As of March 27, 2017, this statute was amended.  The Court applies the version in effect at the time of the ALJ's decision.

observed with diminished bilateral grip and reduced range of movement in the left elbow, the ALJ's finding that Plaintiff's hands/bicep condition was not a severe impairment is supported by the objective medical evidence. For instance, when Dr. Hahn first examined Plaintiff in December 2015, she noted weakened grip in Plaintiff's left hand and some intrinsic atrophy in Plaintiff's right hand. Tr. 484. Dr. Hahn suspected ulnar nerve neuropathy may be causing the hand weakness, but she acknowledged the pinprick sensation test results did not fit that diagnosis. Tr. 485. Dr. Hahn ordered electromyogram (EMG)/nerve conduction (NCV) testing of Plaintiff's arms. Tr. 485. The test results were normal—no evidence of right or left cervical radiculopathy of right or left extremities. Tr. 668. A January 2016 x-ray of the left elbow was also normal. Tr. 543. Dr. Hahn then re-evaluated Plaintiff in March 2016. Tr. 669-70. Other than a weak grasp of his right hand and diminished pinprick sensation in his left arm, the examination results of Plaintiff's upper extremities were normal. Tr. 669. Based on the examination and prior testing and x-rays, Dr. Hahn opined that Plaintiff's left biceps weakness and right-hand weakness were orthopedic issues. Tr. 670. She recommended that Plaintiff be evaluated by an orthopedic. Tr. 669-70. Consistent with this recommendation, Dr. Miguel Schmitz evaluated Plaintiff. Tr. 590-95. The exam was normal as to Plaintiff's upper extremities, with full strength and range of movement in the upper extremities. Tr. 593-94. Then, Dr. Randall Espinosa

ORDER - 11

examined Plaintiff. Tr. 637-44. This orthopedic examination was also fairly unremarkable other than guarded Phalen's and Tinel's elbow tests. Tr. 639. X-rays were also normal, except for a remote healed fracture. Tr. 642. Dr. Espinosa opined that Plaintiff seemed to be most bothered by muscular pain in the biceps area and that the objective findings did not indicate sensory disturbances or weakness. Tr. 643. Dr. Espinosa recommended another nerve conduction study and recommended that Plaintiff participate in hand therapy. Tr. 643. Plaintiff engaged in physical therapy from July to September 2016. Tr. 645-63. As therapy progressed, Plaintiff reported soreness from sessions with pain of 3/10, but he tolerated the range of movement activities. Tr. 644-45. Even if the objective medical evidence was interpreted to support a physical impairment in Plaintiff's hands or bicep, the ALJ rationally found that the condition did not significantly limit Plaintiff's ability to perform basic work activities. This finding is consistent with the other objective medical evidence as to Plaintiff's hands/bicep condition. *See* Tr. 388-89, 384-85 (Jan.-Feb.: 2015: range of movement for left elbow is abnormal, but upper extremities motor strength bilaterally was 5/5, and deep tendon reflexes within normal limits); Tr. 463, 524, 535 (Feb., June, and Nov. 2015: full range of motion with all extremities and muscle strength is 5/5 with no gross anomalies); Tr. 480 (July 2015: x-rays of right hand show that mineralization and alignment were normal with preserved joint spaces); Tr. 486, 491 (Nov. 2015:

while mild tenderness of bilateral medial epicondyles was reported by Plaintiff, there was no pain on flex/extension of wrists and there was full range of movement in all joints); Tr. 823 (Nov. 2016: physical exam revealed normal range of movement and strength); *see also* Tr. 59-60 (Testifying nonexamining physician Dr. Goldstein opined that Plaintiff's hand/biceps condition was not an orthopedic issue, but rather Dr. Goldstein suspected that it was a psychiatric issue or a voluntary reaction.). The ALJ's finding was rational and supported by substantial evidence.

Moreover, Plaintiff failed to establish any harmful error resulting from the ALJ's decision to find Plaintiff's hand/biceps condition as a non-severe impairment. First, even if the ALJ should have determined that the hand/biceps condition is a severe impairment, any error would be harmless because the step was resolved in Plaintiff's favor. *See Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that any of the conditions mentioned creates limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). Second, the vocational expert testified that Plaintiff could perform the representative occupations of call-out operator and furniture rental associate if

Plaintiff was limited to occasional fingering and handling.  Tr. 34, 103, 106.  *See*

*Molina,* 674 F.3d at 1111.  Thus, the ALJ's step two finding is legally sufficient.

### 2.  Mental Conditions

Plaintiff argues the ALJ erred by not considering his mental conditions as a

severe impairment.  ECF No. 17 at 16.  ECF No. 17 at 16.  Plaintiff must establish

there was objective medical evidence proving that Plaintiff suffers from mental

conditions that significantly limited his physical ability to do basic work activities.

20 C.F.R. §§ 404.1520(c), 416.920(c); 20 C.F.R. §§ 404.1508, 416.908 (eff. until

March 26, 2017).  Here, after detailing the objective medical evidence pertaining to

Plaintiff's mental conditions, the ALJ found the objective medical evidence did not

support a finding that Plaintiff's mental conditions caused more than a minimal

limitation on his ability to perform basic work activities and as a result discounted

the opinions of Ms. Harris and Harry Hood, M.S.  Tr. 30.  The ALJ's finding is a

rational interpretation of the medical evidence and is supported by substantial

evidence.

First, the mental examinations of record were unremarkable.  For instance,

Plaintiff's memory was noted to be normal and he was observed to be orientated,

cooperative, and with appropriate mood, affect, judgment, and insight.  *See, e.g.,*

Tr. 441, 454, 458, 464, 524-25, 528-29, 532, 578, 603-05, 608-09, 638-39, 806,

811.

Second, Plaintiff did not challenge the ALJ's decision to discount Mr. Hood's mental status examination opinion that Plaintiff's social skills were mildly impaired due to depressed mood and memory was mildly to moderately deficient. Tr. 30, Tr. 374-77. Thus, any challenge to the weight given to Mr. Hood's opinion is waived and the Court may decline to review the weight given to this opinion. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining the court may decline to address issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998). Despite Plaintiff's waiver, the Court conducted an independent review and finds the ALJ's decision to discount Mr. Hood's vague opinion, which was not consistent with the largely unremarkable exam, supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record).

Finally, the ALJ properly discounted Ms. Harris' opinion that Plaintiff had marked anxiety and memory issues.[3] Ms. Harris treated Plaintiff monthly from

---

[3] The Court notes that Plaintiff failed to challenge the ALJ's evaluation of Ms. Harris's opinion, ECF No. 17 at 16, thus any challenge is waived. *See Carmickle*,

November 2015 to October 2016.  Tr. 562, 665.  In March 2016, Ms. Harris

diagnosed Plaintiff with post-traumatic stress disorder (chronic) and generalized

anxiety disorder with panic.  Tr. 562.  Ms. Harris opined:

> [Plaintiff] has voiced vague suicidal ideation and the level of his
> anxiety make it very unlikely that he will be successful in any
> employment situation in the next few years.  His physical pain
> issues make it very difficult for [Plaintiff] to respond to others in a
> tolerant manner and his hypervigilance to physical and tonal
> stimulation is extreme.

Tr. 562.  In October 2016, Ms. Harris also diagnosed Plaintiff with traumatic brain

injury and opined:

> [Plaintiff] has evidenced significant short term memory issues in
> therapy and has difficulty recalling activities or appointments
> within 2-30 minutes time frames.  The level of his anxiety is

_____

533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.  Despite Plaintiff's waiver, the Court

conducted an independent review and finds no error in the weight given to the

opinion.  Moreover, although Debra Harris' opinion letters indicate that she is a

licensed mental health counselor with a M.Ed., the ALJ referred to Ms. Harris as

"Dr. Harris."  Neither party identified an error in this regard.  As a result, the Court

utilizes the specific and legitimate standard of review for a physician, rather than

the germane reason standard of review that would typically apply to Ms. Harris'

opinions.  *See Molina*, 674 F.3d at 1104.

ORDER - 16

marked and his comfort in being near others makes it very unlikely that he will be successful in any employment situation in the next few years.

Tr. 665. Ms. Harris also continued to opine that Plaintiff's physical pain issues would present difficulties for Plaintiff. Tr. 665.

The ALJ rejected Ms. Harris' opinions. Tr. 30. Because Ms. Harris' opinion was contradicted by the opinion of Philip Comer, Ph.D., Tr. 145-46, the ALJ was required to provide specific and legitimate reasons for rejecting Ms. Harris' opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

First, the ALJ found that Ms. Harris did not provide any supporting information for her opinion that Plaintiff would not be successful in an employment situation, other than he had memory issues and marked anxiety. Tr. 30. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Here, Ms. Harris did not support her opinions with an explanation, and her opinions were not supported by any clinical notes of record. This was a specific, legitimate reason, supported by substantial evidence to discount Ms. Harris' opinions.

ORDER - 17

Second, the ALJ found Ms. Harris' "marked" opinions were not supported by Plaintiff's unremarkable mental status examinations.  A medical opinion may be rejected if it is unsupported by medical findings and the record.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, the ALJ rationally found that the mental examinations of record were unremarkable and did not support Ms. Harris' "marked" anxiety opinion.  For instance, Plaintiff's memory was noted to be normal and he was observed to be orientated, cooperative, and with appropriate mood, affect, judgment, and insight.  *See, e.g.,* Tr. 441, 454, 458, 464, 524-25, 528-29, 532, 578, 603-05, 608-09, 638-39, 806, 811.

Third, based on the objective medical evidence mentioned above, the ALJ's decision to discount Ms. Harris' opinions and find that Plaintiff's mental conditions were not a severe impairment is supported by substantial evidence.

The ALJ made no error in the step two findings.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 17 at 12-14.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient. The ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why she discounted claimant's

symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms,

the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms. Tr. 33.

### 1. Inconsistent with the Objective Medical Evidence

The ALJ found the severity of Plaintiff's reported symptoms were unsupported by the objective medical evidence. Tr. 33-34. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Burch*, 400 F.3d at 680 (Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Here, the ALJ found the medical providers' observations and findings during physical examinations did not support Plaintiff's disabling claims. Tr. 33. For instance, while some physical examinations indicated tenderness to palpation and supported lumbar conditions, the medical notes reflected Plaintiff had normal sensation in his lower extremities, a normal gait, and no weakness or reflex loss. Tr. 384, 388, 392, 395, 398, 401, 408, 410, 412, 414, 416, 418, 420, 422, 441, 457-58, 463-64, 509-510, 738, 593.

The ALJ also noted Dr. Hahn's comprehensive evaluation, during which Plaintiff

actively resisted range of motion testing and required encouragement to give full

effort. *See Tonapetyan*, 242 F.3d at 1148 (recognizing that the tendency to

exaggerate symptoms is a reason to discount the claimant's reported symptoms).

Dr. Hahn's clinical observations, followed by the subsequent negative nerve

studies, Tr. 667-68, and the largely normal orthopedic examinations conducted by

Dr. Espinosa, Tr. 637-644, and Dr. Schmitz, Tr. 590-96, support the ALJ's finding

that Plaintiff's symptoms were not as disabling as claimed.  And as discussed

above, the objective medical evidence reflects that Plaintiff's mental abilities were

not as restricted as he claimed, as he was regularly noted as having normal mood

and affect with normal cognitive functioning.  *See, e.g.,* Tr. 441, 454, 458, 464,

524-25, 528-29, 532, 578, 603-05, 608-09, 638-39, 806, 811.  Moreover, the RFC

limited Plaintiff to light work with postural limitations.  Tr. 31-32.  *See Stubbs-

Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

   2. *Inconsistent with Daily Living Activities*

       The ALJ also evaluated Plaintiff's daily living activities against his disabling

claims.  Tr. 34.  It is reasonable for an ALJ to consider a claimant's activities that

undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a

substantial part of his day engaged in pursuits involving the performance of

exertional or non-exertional functions, the ALJ may find these activities

ORDER - 22

inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, Plaintiff failed to challenge the ALJ's findings as to his daily living activities. Thus, any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2. Regardless, Plaintiff's unsupported contention fails on the merits because the identified activities of daily living, including watching TV, playing games, talking to his sister on the telephone, taking out the trash, shopping, doing activities with his girlfriend, preparing simple meals, attending church, driving limited distances, and working at a substantial gainful activity level the fourth quarter of 2014 contradict Plaintiff's disabling claims. Tr. 287-91, 305-10, 86-89, 93, 272, 275; *see Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (recognizing that an individual's work activity after the alleged disability onset date is a relevant factor). Moreover, about three weeks before the administrative hearing, Plaintiff advised a treating nurse that medication was helping control his symptoms and pain and that he had an improved ability to exercise throughout the day, be more active around the house, and to engage in basic activities of daily living. Tr. 806. This was a clear and

ORDER - 23

convincing reason supported by substantial evidence to discount Plaintiff's symptom claims.

**C. RFC**

Plaintiff faults the ALJ for not incorporating his hand, arm, walking/standing, and mental restrictions into the RFC. ECF No. 14 at 16-18. At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately captures restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174. An RFC finding need not be identical to a medical opinion; rather, it must be consistent with the medical opinion. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Therefore, to the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ was required to include all of Plaintiff's "functional limitations, both physical and mental" in the hypothetical question posed to the vocational expert." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995).

Here, Plaintiff's contention lacks merit.  First, this is a restatement of Plaintiff's argument that the ALJ failed to consider his hand/biceps condition and mental conditions as severe impairments.  *See Stubbs-Danielson*, 539 F.3d at 1175-76.  The ALJ fully considered the medical evidence and rationally determined that Plaintiff's hands/biceps and mental conditions were not severe impairments.  Therefore, the RFC need not include restrictions relating to these non-severe conditions.  Moreover, contrary to Plaintiff's assertion otherwise, ECF No. 17 at 17, Dr. Goldstein's testimony did not support incorporating a grasping limitation in the RFC.  *See* Tr. 59-60 (testifying that based on the objective medical evidence, Plaintiff did not have any fingering or handling difficulties).

Second, the ALJ adequately incorporated Plaintiff's functional limitations relating to his standing and walking abilities into the RFC.  *See Stubbs-Danielson*, 539 F.3d at 1174.  For instance, as opined by Dr. Goldstein, Plaintiff was capable of a wide range of light work, even with the partial tear of the left hip.  Tr. 54-62.  Dr. Goldstein's opinion was consistent with the objective medical evidence relating to Plaintiff's lumbar and neck conditions, including the physical examinations that showed only some tenderness to palpation, some loss of range of motion in the neck and back, some intermittent sensation loss, and some intermittent loss of strength.  *See, e.g.*, Tr. 384, 388, 392, 395, 398, 401, 408, 410, 412, 414, 416, 418, 420, 422, 441, 457-58, 463-64, 509-510, 738, 593.  In addition,

the RFC limiting Plaintiff to light work with postural limitations was consistent with the medical opinions of Dr. Trula Thompson, Tr. 613-15, and Dr. Narendra Parikshak, Tr. 137-39, 147-49, who reached their opinions after reviewing the x-rays of Plaintiff's spine, which revealed largely mild to moderate degenerative disc changes. Tr. 473-77. To the extent the medical evidence and opinions conflicted as to Plaintiff's limitations, the ALJ rationally incorporated Plaintiff's evidentiarily supported impairments into the RFC. *See Hill*, 698 F.3d at 1158.

**D. Step Five**

Plaintiff argues the ALJ erred at step five. ECF No. 17 at 17-18. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228. As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson*, 539 F.3d at 1175-76.

Here, Plaintiff simply restates his argument that the ALJ failed to incorporate his hands/biceps and mental conditions into the RFC and therefore failed to include these conditions in the hypothetical question posed to the vocational expert.  For the reasons provided above, the ALJ's hypothetical was accurate, detailed, and supported by the objective medical record.  Based on the vocational expert's response to the posed complete hypothetical, the ALJ rationally found Plaintiff capable of performing work that exists in significant numbers in the national economy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17,** is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22,** is **GRANTED**.

///

///

///

///

///

ORDER - 28

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED January 17, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE